# PETTY, ADMINISTRATRIX, *v.* TENNESSEE-MISSOURI BRIDGE COMMISSION.

No. 233.   Argued March 4, 1959.—Decided April 20, 1959.

*Douglas MacLeod* argued the cause for petitioner. With him on the brief were *Charles W. Miles III, W. Morris Miles* and *Fred Robertson.*

*James M. Reeves* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

When the Court in 1793 held that a State could be sued in the federal courts by a citizen of another State [1] (*Chisholm* v. *Georgia,* 2 Dall. 419), the Eleventh Amendment [2] was passed precluding it. But this is an immunity which a State may waive at its pleasure (*Missouri* v. *Fiske,* 290 U. S. 18, 24) as by a general appearance in litigation in a federal court (*Clark* v. *Barnard,* 108 U. S. 436, 447–448) or by statute. *Ford Motor Co.* v. *Department of Treasury,* 323 U. S. 459, 468–470. The conclusion that there has been a waiver of immunity will not be lightly inferred. *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151, 171. Nor will a waiver of immunity from suit in state courts do service for a waiver of immunity where the litigation is brought in the federal court. *Chandler* v. *Dix,* 194 U. S.

[1] "When Chisholm dared to sue the 'sovereign state' of Georgia, all the states were so indignant that Congress moved with vehement speed to prevent subsequent affronts to the dignity of states. More than the dignity of a sovereign state was probably at issue, however. When the Eleventh Amendment was proposed many states were in financial difficulties and had defaulted on their debts. The states could therefore use the new amendment not only in defense of theoretical sovereignty but also in a more practical way to forestall suits by individual creditors!" Irish and Prothro, The Politics of American Democracy (1959), p. 123.

[2] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

590, 591–592. And where a public instrumentality is created with the right "to sue and be sued" that waiver of immunity in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal, courts. Cf. *Delaware River Comm'n* v. *Colburn,* 310 U. S. 419. Suits against agencies of a State based on maritime torts are no exception to these rules. *Ex parte New York,* 256 U. S. 490.

The question here is whether Tennessee and Missouri have waived their immunity under the facts of this case.

Congress, under conditions specified in 33 U. S. C. § 525 *et seq.,* gave its consent to the construction of bridges over the navigable waters in the United States. Respondent is a "body corporate and politic" created by Missouri (13 Vernon's Ann. Stat., Tit. 14, § 234.360) and Tennessee (P. L. 1949, cc. 167, 168) acting pursuant to the Compact Clause of the Constitution. Art. I, § 10, cl. 3.[3] The compact prepared by the two States and submitted to the Congress provided in Art. I, §§ 1 and 2, that respondent should have the power to build a bridge and operate ferries across the Mississippi at specified points and in Art. I, § 3, that it should have the power "to contract, to sue and be sued in its own name." Congress granted its consent to the compact, 63 Stat. 930, stating in a proviso:

> "That nothing herein contained shall be construed *to affect, impair, or diminish any right, power, or jurisdiction* of the United States or *of any court,* department, board, bureau, officer, or official *of the United States, over or in regard to any navigable waters, or any commerce between the States* or with foreign countries, or any bridge, railroad, highway, pier, wharf, or other facility or improvement, or any

---

[3] "No State shall, without the consent of Congress, . . . enter into any Agreement or Compact with another State . . . ."

> other person, matter, or thing, forming the subject matter of the .aforesaid compact or agreement or otherwise affected by the terms thereof." (Italics added.)

The facts are that petitioner's husband was employed on a ferryboat operated by respondent as a common carrier across the Mississippi between a point in Missouri and one in Tennessee. He met his death when he was trapped in the pilothouse of the ferryboat as it sank, following a collision with another boat. Suit was brought under the Jones Act, 46 U. S. C. § 688, charging respondent with negligence.

The District Court granted the motion to dismiss, holding that respondent is an agency of the States of Tennessee and Missouri and immune from suit in tort. 153 F. Supp. 512. The Court of Appeals, agreeing with that view, affirmed. 254 F. 2d 857. The case is here on certiorari: 358 U. S. 811.

The construction of a compact sanctioned by Congress under Art. I, § 10, cl. 3, of the Constitution presents a federal question. *Delaware River Comm'n* v. *Colburn, supra,* at 427. Moreover, the meaning of a compact is a question on which this Court has the final say.[4] *Dyer* v. *Sims,* 341 U. S. 22, 28. The rule is no different when the contention is that a State has, by compact, waived its immunity from suit. Of course, when the alleged basis of waiver of the Eleventh Amendment's immunity is a state statute, the question to be answered is whether the State has intended to waive its immunity. *Chandler* v. *Dix, supra.* But where the waiver is, as here, claimed to

---

[4] That is true even though the matter in dispute concerns a question of state law on which the courts or other agencies of the State have spoken. *Dyer* v. *Sims,* 341 U. S. 22, 30–32. While we show deference to state law in construing a compact, state law as pronounced. in prior adjudications and rulings is not binding. *Ibid.*

arise from a compact between several States, the Court is called on to interpret not unilateral state action but the terms of a consensual agreement, the meaning of which, because made by different States acting under the Constitution and with congressional approval, is a question of federal law. *Delaware River Comm'n* v. *Colburn,* *supra*. In making that interpretation we must treat the compact as a living interstate agreement which performs high functions in our federalism,[5] including the operation of vast interstate enterprises.[6]

The Court of Appeals laid emphasis on the law of Missouri, which, it said, construes a sue-and-be-sued provision as not authorizing a suit for negligence against a public corporation. It likewise cited Tennessee decisions strictly construing statutes permitting suits against the State. We assume *arguendo* that this suit must be considered as one against the States since this bi-state corporation is a joint or common agency of Tennessee and Missouri. But we disagree with the construction given

---

[5] The Court in *Hinderlider* v. *La Plata Co.,* 304 U. S. 92, 104, spoke of two methods under our Constitution of settling controversies between States. One is our original jurisdiction defined in Art. III, § 2. The other is the compact: "The compact—the legislative means—adapts to our Union of sovereign States the age-old treaty-making power of independent sovereign nations. Adjustment by compact without a judicial or quasi-judicial determination of existing rights had been practiced in the Colonies, was practiced by the States before the adoption of the Constitution, and had been extensively practiced in the United States for nearly half a century before this Court first applied the judicial means in settling the boundary dispute in *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 723–25."

[6] See Port of New York Authority, 42 Stat. 174; New York and New Jersey Tunnel Agreement, 41 Stat. 158; Kansas City Water Works Agreement, 42 Stat. 1058; New York-Vermont Bridge Agreement, 45 Stat. 120; Delaware River Toll Bridge Compact, 61 Stat. 752; Menominee River Bridge Compact, 45 Stat. 300.

by the Court of Appeals to the sue-and-be-sued clause. For the resolution of that question we turn to federal not state law. Congress might of course adopt as federal law the law of either or both of the States. *Delaware River Comm'n* v. *Colburn, supra.* Cf. *Commissioner* v. *Stern,* 357 U. S. 39; *Helvering* v. *Stuart,* 317 U. S. 154; *Myers* v. *Matley,* 318 U. S. 622. But Congress took no such step here. It approved a sue-and-be-sued clause in a compact under conditions that make it clear that the States accepting it waived any immunity from suit which they otherwise might have.

This compact, approved by Congress in 1949, was made in an era when the immunity of corporations performing governmental functions was not in favor in the federal field. In *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381, decided nearly 10 years before the present compact was made, the authority to sue and be sued contained in a federal charter granted a government corporation was held to be broad enough to include suits in torts, at least where the duties relied upon "have their source in contract even though the guilty agents may be merely tort-feasors." *Id.,* at 395. There the underlying contract was a bailment; here it is employment. To draw a distinction in either the *Keifer* case or in this case between tort and contract would be to "make application of a steadily growing policy of governmental liability contingent upon irrelevant procedural factors. These, in our law, are still deeply rooted in historical accidents to which the expanding conceptions of public morality regarding governmental responsibility should not be subordinated." *Id.,* at 396.

This case, like the *Keifer* case, involves the launching of a governmental corporation into an industrial or business field. In view of the federal climate of opinion which by that time had grown up around the sue-and-be-sued clause, we cannot believe that Congress intended to

confine it more narrowly here than in the *Keifer* case. But we need not rest on that alone. Congress, when it approved this compact, attached a condition that "nothing herein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of . . . any court . . . of the United States over or in regard to any navigable waters or any commerce between the States . . . ." We need not stop to catalogue all the ends that may be served by this proviso. See S. Rep. No. 1198, 81st Cong., 1st Sess.; H. R. Rep. No. 1429, 81st Cong., 1st Sess. It is argued that the proviso was included to make plain that the bonds issued by the agency were taxable by the United States. We must go further, however, to find a rational purpose since another proviso of the Act of Congress specifically stated: "That any obligations issued and outstanding, including the income derived therefrom, under the terms of the compact or agreement, and any amendments thereto, shall be subject to the tax laws of the United States." Whatever may be the several effects of the other proviso with which we are presently concerned, one result seems to us clear. This proviso, read in light of the sue-and-be-sued clause in the compact, reserves the jurisdiction of the federal courts to act in any matter arising under the compact over which they would have jurisdiction by virtue of the fact that the Mississippi is a navigable stream and that interstate commerce is involved. There is no more apt illustration of the involvement of the commerce power and the power over maritime matters than the Jones Act. *O'Donnell* v. *Great Lakes Dredge & Dock Co.*, 318 U. S. 36, 39–43. This is not enlarging the jurisdiction of the federal courts but only recognizing as one of its appropriate applications the business activities of an agency active in commerce and maritime matters.

The States who are parties to the compact by accepting it and acting under it assume the conditions that Congress

under the Constitution attached.[7] So if there be doubt as to the meaning of the sue-and-be-sued clause in the setting of the compact prior to approval by Congress, the doubt dissipates when the condition attached by Congress is accepted and acted upon by the two States.

Finally we can find no more reason for excepting state or bi-state corporations from "employer" as used in the Jones Act than we could for excepting them either from the Safety Appliance Act (*United States* v. *California,* 297 U. S. 175) or the Railway Labor Act (*California* v. *Taylor,* 353 U. S. 553). In the latter case we reviewed at length federal legislation governing employer-employee relationships and said, "When Congress wished to exclude state employees, it expressly so provided." 353 U. S., at 564. The Jones Act (46 U. S. C. § 688) has no exceptions from the broad sweep of the words "Any seaman who shall suffer personal injury in the course of his employment may" etc. The rationale of *United States* v. *California,*

---

[7] "Historically the consent of Congress, as a prerequisite to the validity of agreements by States, appears as the republican transformation of the needed approval by the Crown. But the Constitution plainly had two very practical objectives in view in conditioning agreement by States upon consent of Congress. For only Congress is the appropriate organ for determining what arrangements between States might fall within the prohibited class of 'Treaty, Alliance, or Confederation', and what arrangements come within the permissive class of 'Agreement or Compact.' But even the permissive agreements may affect the interests of States other than those parties to the agreement: the national, and not merely a regional, interest may be involved. Therefore, Congress must exercise national supervision through its power to grant or withhold consent, or to grant it under appropriate conditions. The framers thus astutely created a mechanism of legal control over affairs that are projected beyond State lines and yet may not call for, nor be capable of, national treatment. They allowed interstate adjustments but duly safeguarded the national interest." Frankfurter and Landis, The Compact Clause of the Constitution—A Study in Interstate Adjustments, 34 Yale L. J. 685, 694–695.

*supra,* and *California* v. *Taylor, supra,* makes it impossible for us to mark a distinction here and hold that this bi-state agency is not an employer under the Jones Act.

*Reversed.*

MR. JUSTICE BLACK, MR. JUSTICE CLARK and MR. JUSTICE STEWART concur in the judgment and opinion of the Court with the understanding that we do not reach the constitutional question as to whether the Eleventh Amendment immunizes from suit agencies created by two or more States under state compacts which the Constitution requires to be approved by the Congress.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER join, dissenting.

The Court, acknowledging the applicability of the provisions of the Eleventh Amendment to the Tennessee-Missouri Bridge Commission, states: "The question here is whether Tennessee and Missouri have waived their immunity under the facts of this case." *Ante,* p. 277. The Court finds such a waiver in the words "sue and be sued" included in Art. I, § 3, of the Compact creating respondent Commission. The Supreme Court of Missouri has said: "A statutory provision that such a public corporation 'may sue and be sued' does not authorize a suit against it for negligence." *Todd* v. *Curators of the University of Missouri,* 347 Mo. 460, 465, 147 S. W. 2d 1063, 1064. The Tennessee courts have not ruled on the significance of this clause, but the Supreme Court of Tennessee has been emphatic in its holding that waivers of sovereign immunity from suit are to be narrowly construed. *Hill* v. *Beeler,* 199 Tenn. 325, 286 S. W. 2d 868. The Court of Appeals below held that in neither Missouri nor Tennessee would the language "sue and be sued" render a public corporation liable for suit in tort. 254 F. 2d 857. Three times during this Term the Court fol-

lowed its settled practice in dealing with a doubtful state statute by deferring to interpretations of local law rendered by the lower federal courts.[1] We should not now disregard this settled practice but should accept the interpretation of Missouri and Tennessee law as found by the Court of Appeals for the Eighth Circuit.

Despite the fact that it has been authoritatively held that neither State waives sovereign immunity by the "sue and be sued" provision, this Court finds that those words constitute a waiver by the States of the immunity from suit, in the federal courts, afforded them by the Eleventh Amendment.

The legal consequences of the terms of a Compact are not, as a generalized proposition, for the originating construction of this Court. What was held in *Dyer* v. *Sims,* 341 U. S. 22, does not support such a claim. That case arose under a Compact among eight States to control pollution in the Ohio River System. Seven of the States asserted that under the Compact West Virginia was obligated to appropriate funds for administrative expenses of the Joint Commission formed under the Compact. By a self-serving construction of its duty under the Compact, West Virginia resisted the claims of the other States to the Compact. Here was a typical controversy among States, a controversy as to the undertaking of a Compact among States, for the peaceful solution of which the Constitution designed Art. III, § 2. The very nature of the controversy made it necessary for this Court to construe the terms of the Compact, that is, the contractual obligations assumed by West Virginia *vis-à-vis* the other parties to the Compact. The problem presented by this case has no kinship with that presented by *Dyer* v. *Sims.* This is a suit by an individual against the States over which the

---

[1] *Sims* v. *United States,* 359 U. S. 108; *The Tungus* v. *Skovgaard,* 358 U. S. 588; *United Pilots Assn.* v. *Halecki,* 358 U. S. 613.

federal courts have jurisdiction only if the States have authorized such suits. Both States deny having given such authorization and the Court of Appeals has justified their denial in its finding of their law. Since a Compact comes into being through an Act of Congress, its construction gives rise to a federal question. *Delaware River Comm'n* v. *Colburn,* 310 U. S. 419, 427. But a federal question does not require a federal answer by way of a blanket, nationwide substantive doctrine where essentially local interests are at stake. See, *e. g., Board of County Comm'rs* v. *United States,* 308 U. S. 343. A Compact is, after all, a contract. Ordinarily, in the interpretation of a contract, the meaning the parties attribute to the words governs the obligations assumed in the agreement. Similarly, since these States had the freedom to waive or to refuse to waive immunity granted by the Eleventh Amendment, the language they employed in the Compact, not modified by Congress, should be limited to the legal significance that these States have placed upon such language, not to avoid the obligations they undertook, but to enforce the meaning of conventional language used in their law.

This Court, however, finds that Congress, in granting the necessary consent to the Compact, imposed suability in the federal courts upon the States as a condition to its consent. No doubt Congress could have insisted upon a provision waiving immunity from suit in the federal courts as the price of obtaining its consent to the Compact. The fact that this Court in *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381, 389–391, indicated that governmental immunity from suit had fallen into disfavor may well have been a good reason why Congress should have done just this in passing upon the Tennessee-Missouri Compact. It is a bad reason for this Court to write in such a waiver when Congress has not done so. Surely the doctrine of sovereign immunity was

not so obsolete that a waiver of immunity did not require a clear indication that Congress had exacted a waiver by the States as the price of consent. The disfavor which was referred to by this Court in *Keifer* has not attained such acceptance as to lead this Court to disregard the strictness with which States continue to enforce it. See *Great Northern Life Ins. Co. v. Read,* 322 U. S. 47. Moreover, the Court's conclusion that Congress must have understood the "sue and be sued" clause to be a waiver of the Eleventh Amendment and that therefore their consent must have been predicated on that understanding finds no support in the legislative history.[2]

As the evidence from which the Court finds an implied imposed withdrawal of the States' immunity from suit is tenuous, the basis for its finding of an explicit imposition of waiver is non-existent. Such an explicit imposition is deemed to lie in the language in the Act which states that nothing in the Compact "shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States or of any court, . . . over or in regard to any navigable waters, or any commerce between the States . . . ." Read as this should be read on the natural understanding of the phrasing, there is nothing to indicate that the subject of immunity from suit was in

---

[2] See S. Rep. No. 1198, 81st Cong., 1st Sess.; H. R. Rep. No. 1429, 81st Cong., 1st Sess.; 95 Cong. Rec. 14589–14590, 14982–14983. In letters to the House and Senate Committees considering the bill consenting to this Tennessee-Missouri Compact, Acting Secretary of Commerce Thomas C. Blaisdell, Jr., expressed his belief that "this provision is intended to avoid the application to the Federal Government of the specific provision found in the compact that 'Such bonds shall be the negotiable bonds of the Commission, the income from which shall be tax free.' . . ." S. Rep. No. 1198, *supra,* at 3; H. R. Rep. No. 1429, *supra,* at 3. To avoid the possibility that the provision was not sufficiently clear, Congress added specific language stating that the bonds issued by the Commission were taxable by the United States. 63 Stat. 930.

contemplation. In addition, this clause has a history of more than one hundred years which confirms and emphasizes the plain intendment of the language.

The use of clauses preserving "jurisdiction . . . of any court" dates back to a Compact between New York and New Jersey approved by Congress in 1834: "*Provided,* That nothing therein contained shall be construed to impair or in any manner affect, any right of jurisdiction of the United States in and over the islands or waters which form the subject of the said agreement." [3] Substantially this same language may be found in other early congressional Acts consenting to interstate Compacts.[4] An alternate but similar provision regarding federal jurisdiction is found in some other congressional consents: "Nothing herein contained shall be construed to affect the right of the United States to regulate commerce, or the jurisdiction of the United States over navigable waters." [5] A third variation has been: "*Provided,* That nothing therein contained shall be construed as impairing or in any manner affecting any right or jurisdiction of the United States in and over the region which forms the subject of said agreement." [6] In not one of the ten cited Compacts thus approved was there any language which could be construed as a waiver of the constitutional immunity granted to States from suits in the federal courts. And yet the language before us, in essence conveying the same meaning, is said to have that effect.[7] Indeed, the identical

---

[3] 4 Stat. 711.

[4] 20 Stat. 483; 21 Stat. 352 (added "jurisdiction of its courts"); 25 Stat. 553 (added "jurisdiction of its courts"); 34 Stat. 861.

[5] 40 Stat. 515. Similar language is found in 41 Stat. 158.

[6] 42 Stat. 180. See similar language in 45 Stat. 301; 45 Stat. 121.

[7] In some Compacts there have been similar though not identical federal jurisdiction clauses in the Compacts themselves, although those Compacts did not contain suability provisions. 66 Stat. 74, 77–78; 68 Stat. 690, 697. In the recently approved Compact between

clause upon which the Court today rests its finding of an imposed waiver of the Eleventh Amendment has appeared in at least two prior consents to Compacts. One of these Compacts contained a "sue and be sued" provision,[8] but the other did not.[9] The history of these federal jurisdiction provisions demonstrates beyond peradventure that the clause was unrelated to the question of waiver of Eleventh Amendment immunity.

The conclusion that what the language in the Act alone would not do it accomplishes when "read in light of the sue-and-be-sued clause," *ante,* p. 281, violates the very congressional language on which it relies. Had there been no "sue and be sued" clause in the Compact, this Bridge Commission could not have been sued in the federal courts despite the fact that it was operating a vessel on navigable water and in interstate commerce. The Eleventh Amendment would not have permitted it. By finding that language in the Compact permits this suit, the Court is construing the Compact to "affect," by enlarging, the jurisdiction of the United States courts over activities conducted in interstate commerce.

The constitutional requirement of consent by Congress to a Compact between the States was designed for the protection of national interests by the power to withhold consent or to grant it on condition of appropriate safeguards of those interests. The Compact may impair the

---

California and Oregon involving the Klamath River Basin, 71 Stat. 497, the Compact itself contains clauses rendering suits possible against state agencies and also a clause reserving federal jurisdiction, in its terms similar to the provisions in prior congressional consents to Compacts. Yet another provision states that nothing in the Compact shall be construed as "Enlarging, diminishing or otherwise affecting the jurisdiction of the courts of the United States." 71 Stat. 508. It was, clearly enough, not believed that these provisions were inconsistent with each other.

[8] 49 Stat. 1058, 1060.

[9] 64 Stat. 568, 571.

course of interstate commerce in a way found undesirable by Congress. Or the national interest may derive from the necessity of maintaining a properly balanced federal system by vetoing a Compact which would adversely affect States not parties to the Compact. To imply from a congressional consent changes in the law of the Compact States of merely local concern, such as dislodging a State's policy on suability for torts attributable to the administration of the bridge (while necessarily leaving unaffected the State's suability for torts not attributable to its administration), would constitute a complete disregard of the purpose of the Constitution in requiring congressional consent to Compacts. Such disregard would introduce a wholly irrational disharmony in the application of local policy.

In view of the authorities cited by the Court for the proposition that the Jones Act applies to the Commission,[10] I assume that the Court is referring solely to the substantive applicability of that Act. Believing as I do that the federal courts have no jurisdiction over this suit, I do not reach that substantive question.

I would affirm the judgment of the Court of Appeals for the Eighth Circuit.

---

[10] Suit in *United States* v. *California*, 297 U. S. 175, was instituted by the United States, and jurisdiction over such an action is not within the proscription of the Eleventh Amendment. In *California* v. *Taylor*, 353 U. S. 553, the State intervened in an action brought against the National Railroad Adjustment Board, hence voluntarily submitted itself to the jurisdiction of the federal courts.