Mr. Justice White,
with whom Mr. Justice Douglas, Mr. Justice Harlan, and Mr. Justice Stewart join,
dissenting.
I agree that it is within the power of Congress to condition a State’s permit to engage in the interstate transportation business on a waiver of the State’s sovereign immunity from suits arising out of such business. Congress might well determine that allowing regulable conduct such as the operation of a railroad to be undertaken by a body legally immune from liability directly resulting from these operations is so mimical to the purposes of its regulation that the State must be put to the option of either foregoing participation in the conduct or consenting to legal responsibility for injury caused thereby.
However, the decision to impose such conditions is for Congress and not for the courts. The majority today follows the Court’s consistent holdings that an uncon-senting State is constitutionally immune from federal court suits brought by its own citizens as well as by citizens of other States. It should,not be easily inferred that Congress, in legislating pursuant^to one article of the Constitution, intended to effect an automatic and compulsory waiver of rights arising under another. Only when Congress has clearly considered the problem and *331 expressly declared that any State which undertakes given regulable conduct will be deemed thereby to have waived its immunity should courts disallow the invocation of this defense. Particular deference should be accorded that “old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect,” United States v. Mine Workers, 330 U. S. 258, 272, where the rights and privileges find their origin in the Constitution. Far from manifesting such an unequivocal determination, the legislative history of the Federal Employers’ Liability Act indicates that Congress did not even consider the possible impact of its legislation upon state immunity from suits. The expressed purpose of the Act was “to change the common-law liability of employers.” [1] Certain specific defenses available to a railroad employer in an employee’s personal injury suit were removed, but sovereign immunity was not one of them. To require Alabama’s immunity defense to yield because of a claimed inconsistency with language of the Act making its provisions applicable to “every common carrier by railroad while engaging in commerce” relegates the States’ constitutional immunity, not even mentioned in the Act, to the level of state statutory or common-law defenses, four of which the statute expressly proscribed. A decent respect for the normally preferred position of constitutional rights dictates that if Congress decides to exercise its power to condition privileges within its control on the forfeiture of constitutional rights its intention to do so should appear with unmistakable clarity.
In previous opinions the Court has indicated that waiver of sovereign immunity will be found only where *332 stated by “the most express language or by such overwhelming implication from the text as would leave no room for any other reasonable construction.” Murray v. Wilson Distilling Co., 213 U. S. 151, 171. See Ford Motor Co. v. Department of Treasury, 323 U. S. 459, 468-470. If the automatic consequence of state operation of a railroad in interstate commerce is to be waiver of sovereign immunity, Congress’ failure to bring home to the State the precise nature of its option makes impossible the “intentional relinquishment or abandonment of a known right or privilege” which must be shown before constitutional rights may be taken to have been waived. Johnson v. Zerbst, 304 U. S. 458, 464; Fay v. Noia, 372 U. S. 391. The majority in effect holds that with regard to sovereign immunity, waiver of a constitutional privilege need be neither knowing nor intelligent.[2]
Preferring to leave the limiting of constitutional defenses to that body empowered to impose such conditions, I respectfully dissent.

 H. R. Rep. No. 1386, 60th Cong., 1st Sess., 1 (1908). In debate on the House floor Representative Henry also summarized the Act as having “changed four rules of the common law.” 42 Cong. Rec. 4427.

 Petty v. Tennessee-Missouri Bridge Comm’n, 359 U. S. 275; California v. Taylor, 353 U. S. 553, and United States v. California, 297 U. S. 175, are all inapposite. In Petty there was an express waiver, the compact itself expressly declaring that the bi-staté authority could “sue and be sued.” Taylor was not a suit against a State but against the members of the National Railroad Adjustment Board requiring them to take action on the plaintiffs’ claims under the Railway Labor Act. Though the Court held the Act applicable to the State Belt Railroad it expressly disclaimed deciding any sovereign immunity issue. Footnote 16 of that opinion states: “The contention of the State that the Eleventh Amendment to the Constitution of the United States would bar an employee of the Belt Railroad from enforcing an award by the National Railroad Adjustment Board in a suit against the State in a United States District Court under §3, First (p), of the Act is not before us under the facts of this case.” 353 U. S., at 568. And the suit to recover the statutory penalty for violation of the federal Safety Appliance Act in United States v. California was brought by the United States, against whom it has long been recognized there is no state sovereign immunity. United States v. Texas, 143 U. S. 621.