SENECA NATION OF INDIANS,
Plaintiff,

v.

The STATE OF NEW YORK et al.,
Defendants.

No. Civ–1971–528.

United States District Court,
W. D. New York.

July 24, 1975.

Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C. (Arthur Lazarus, Jr., Washington, D.C., of counsel), for plaintiff.

Louis J. Lefkowitz, Atty. Gen. (Robert T. Mulig, Asst. Atty. Gen., Albany, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

The plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This action was instituted after several maps were filed in 1971 pursuant to Section 30 of the Highway Law of the State of New York, describing land within the Allegany Reservation of the plaintiff which the State wished to appropriate in connection with the construction of a highway. The State claims that the filing vested title in the State of New York and extinguished plaintiff's right to the unrestricted use and occupancy of these lands. The plaintiff claims that, because of treaties between the Seneca Nation and the United States, the State is barred from appropriating reservation land and seeks a declaratory judgment that the defendants are without the authority, right or power to appropriate

the land of the Seneca Nation, and an order enjoining the defendants from appropriating the land and an order annulling the filing of the maps.[1]

Before discussing whether defendants have the right to appropriate pursuant to § 30, there are some preliminary matters which ought to be discussed briefly. The defendants' claim that the eleventh amendment of the Constitution bars plaintiff's action is without merit. Because this suit alleges that a state official has exceeded the authority conferred upon him, it is not prohibited. Although the State of New York and the New York Department of Transportation are named as defendants, in addition, the Commissioner of Transportation is also a named defendant. If he does not have the authority to act against plaintiff's land, a suit may be brought against him. *See Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Great Lakes Inter-Tribal Council, Inc. v. Voight*, 309 F.Supp. 60 (W.D.Wis.1970), the court held that an Indian Tribe is not prohibited by the eleventh amendment from suing to enjoin the actions of a state official which conflict with treaty rights. Furthermore, since defendants answered without asserting their rights under the eleventh amendment, there is authority that they have waived their right to immunity. *See Petty v. Tennessee-Missouri Bridge Commissions*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

The Seneca Nation and the United States have entered into a number of treaties which guarantee to plaintiff the unrestricted use and occupancy of the land which defendants seek to appropriate for state highway purposes. Treaty of November 11, 1794, with the Six Nations, 7 Stat. 44; Treaty of January 9, 1789, with the Six Nations, 7 Stat. 33; Treaty of October 22, 1784, with the Six Nations, 7 Stat. 15. Article III of the Treaty of 1794 explicitly provided that members of the Seneca Nation would not be disturbed in "their use and enjoyment" of the land in question in the present action until "they choose to sell the same to the people of the United States, who have the right to purchase." 7 Stat. at 45.

An examination of the briefs reveals that the State is attempting to reargue questions which have been decided to the contrary in numerous other cases. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed. 2d 73 (1974); *Tuscarora Nation of Indians v. Power Authority*, 257 F.2d 885 (2d Cir. 1958), and *United States v. Forness*, 125 F.2d 928 (2d Cir. 1942).

Since *Worcester v. Georgia*, 31 U.S. 515, 6 Pet. 515, 8 L.Ed. 483 (1832), the Supreme Court has held on a number of occasions that in the absence of explicit federal statutory authority, states have no power to impose their laws on Indian Tribes. This principle was applied in particular to the Seneca Nation in *United States v. Forness, supra*:

> But state law cannot be invoked to limit the rights in lands granted by the United States to the Indians, because, as the court below recognized, state law does not apply to the Indians except so far as the United States has given its consent. 125 F.2d at 932.

In *Tuscarora Nation of Indians v. Power Authority, supra,* the Power Authority of the State of New York attempted to appropriate certain lands of the Tuscarora Nation using the same section of the Highway Law which the State used in this taking. Because no

---

1. Shortly after this action was filed, the parties entered into serious negotiations to settle this dispute. In furtherance of the negotiations, the New York Legislature enacted, on June 22, 1973, legislation permitting defendants to exchange lands which the State of New York seeks to acquire within the Allegany Reservation for other lands outside the reservation. New York Unconsolidated Laws, Ch. 963 (McKinney 1973). Plaintiff and defendants have not been able to reach an agreement.

federal law empowered New York to do this, the action of the State was vacated and annulled. Finally, in *Oneida Indian Nation v. County of Oneida, supra,* these prior holdings in *Forness* and the *Tuscarora* case were discussed and approved.

The defendants argue that the history of the Non-Intercourse Acts, 1 Stat. 137 (1790) and 1 Stat. 329 (1793), and the similar legislation which followed indicate that the federal ban did not apply to the State of New York because it was one of the original thirteen states and did not surrender to the United States its power to condemn Indian lands. This theory was rejected by the Supreme Court in the *Oneida* case.

> The rudimentary propositions that Indian title is a matter of federal law and can be extinguished only with federal consent applies in all of the States, including the original 13. It is true that the United States never held fee title to the Indian lands in the original States as it did to almost all the rest of the continental United States and that fee title to Indian lands in these States, or the pre-emptive right to purchase from the Indians, was in the State, . . .. But this reality did not alter the doctrine that federal law, treaties, and statutes protected Indian occupancy and that its termination was exclusively the province of federal law. 414 U.S. at 670, 94 S.Ct. at 778.

■ In the absence of explicit authorization by any federal statute, the State of New York has no power to apply the New York Highway Law, McKinney's Consol.Laws, c. 25, to lands within the Allegany Reservation. The defendants argue that this authority was provided by legislation of 1950, which provided in part:

> The courts of the State of New York under the laws of such State shall have jurisdiction in civil actions and proceedings between Indians . . . and any other person or persons to the same extent as the courts of the State shall have jurisdiction in other civil actions and proceedings, as now or hereafter defined by the laws of such State . . ..

Act of September 13, 1950, ch. 845, § 1, 64 Stat. 845; 25 U.S.C.A. § 233 (1963).

However, this Act does not authorize New York to appropriate land belonging to the Indians under the Highway Law because it contains a proviso which explicitly prohibits New York from applying any law which will result in the alienation of Indian land:

> . . . nothing herein contained shall be construed as authorizing the alienation from any Indian nation, tribe, or band of Indians of any lands within any Indian reservation in the State of New York . . ..

*Id.*

This interpretation of the 1950 Act was confirmed by the court in *Tuscarora Nation of Indians v. Power Authority, supra* at 889, 893, 895. In addition, in the *Oneida* case the Supreme Court emphasized that "[u]nder the penultimate proviso [of the 1950 Act] the matter of alienating tribal reservation lands would appear to have been left precisely where it was prior to the act." *Oneida Indian Nation v. County of Oneida, supra* 414 U.S. at 680, 94 S.Ct. at 784.

Plaintiff's motion for summary judgment is granted. Plaintiff is directed to prepare judgment, upon notice to the defendants, for submission to the court.

So ordered.