Honorable Henry A. Panethiere State Senator, District 11 1104 Oak Kansas City, Missouri 64106
Dear Senator Panethiere:
This is in response to your request asking:
 "Is the Kansas City Area Transportation Authority, an entity created for operation of public transit system in the states of Missouri and Kansas by means of a Compact executed by those states (Sec. 238.010, et seq., R.S.Mo. 1969 and Sec. 12-2524, K.S.A.) under state law an agency or instrumentality of the state.
"And, if so, effective date it became such."
You also state:
 "The Kansas City Area Transportation Authority receives federal funds from the urban mass transportation administration for project developments. These funds are placed in interest-bearing accounts prior to project disbursement. The Intergovernmental Cooperation Act of 1968 42 U.S. Code Ann. Sec. 4213 provides that states or agencies and instrumentalities thereof are not held accountable for interest earned pending program disbursement. Political subdivisions of states are held accountable. The Department of Transportation has agreed to abide by the opinion of local state attorneys as to whether the KCATA is an agency or instrumentality of the state under state law."
As you have indicated, the laws relating to the Kansas City Area Transportation Authority are found at Sections 238.010, etseq., RSMo, and Sections 12-2524, et seq., K.S.A. The Compact was approved by Congress on September 21, 1966. 80 Stat. 826, P.L. 89-599.
Title 42 U.S.C.A. § 4213 provides in part:
 ". . . States shall not be held accountable for interest earned on grant-in-aid funds, pending their disbursement for program purposes."
We have been advised that a decision of the Comptroller General of the United States dated February 9, 1977, File E-180617, holds that the federal grantor agency should follow state law in determining whether transit authorities are state instrumentalities, and therefore permitted to retain any interest earned on federal grants, or political subdivisions of the state, which may not retain such interest. Such decision cites Section 203 of the Intergovernmental Cooperation Act of 1968 which is quoted above from U.S.C.A.
Article III of the Compact states in part:
 "There is created the Kansas City Area Transportation Authority of the Kansas City Area Transportation District (hereinafter referred to as the `Authority'), which shall be a body corporate and politic and a political subdivision of the States of Missouri and Kansas."
Further, we note that the Kansas City Area Transportation Authority was assigned to the Missouri Department of Transportation under Section 14.2 of the Omnibus State Reorganization Act of 1974, RSMo Supp. 1975, Appendix B, p. 1274, and is an assigned agency of that department under the Department of Transportation Plan of Reorganization, RSMo Supp. 1975, Appendix C, p. 1331. Additionally, under such Plan the Authority works closely with the Division of Transit.
Clause 3, Section 10 of Article I of the United States Constitution provides:
 "No state shall, without the consent of Congress, lay any duty of tonnage, keep troops or ships of war in time of peace, enter into any agreement or compact with another state, or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay."
In Kansas City Area Transportation Authority v. Ashley, 478 S.W.2d 323
(Mo. 1972), the Supreme Court of Missouri held that the Authority is not a political subdivision within the now repealed Missouri constitutional provision giving the Missouri Supreme Court original jurisdiction in cases involving political subdivisions of the state despite the provisions in the law creating the Authority which states that the Authority is a "political subdivision." The court stated that such Authority did not have a delegation of governmental functions as would constitute that agency a governmental unit requiring Missouri Supreme Court jurisdiction such as levying, collecting taxes, electing officers, and defining powers and duties as governmental offices of the body corporate.
Further, the United States Eighth Circuit Court of Appeals held in Ladue Local Lines, Inc. v. Bi-State Development Agency ofthe Missouri-Illinois Metropolitan District, 433 F.2d 131 (8th Cir. 1970), that such a compact body is a joint or common agency of the two compact states.
It was similarly held by the United States Supreme Court that state agencies created by a compact between states are common or joint agencies of such states. Petty v. Tennessee-Missouri BridgeCommission, 359 U.S. 275, 3 L.Ed.2d 804, 79 S.Ct. 785 (1959). It has also been held that the Board of Transportation of New York, though its members are appointed by the mayor and it acts as the city's agent in operating the rapid transit system, is nevertheless a "state instrumentality" in transit matters and performs a state function. Klein v. O'Dwyer, 80 N.Y.S.2d 343 (N.Y. 1948). Although it was held that employees of the Board of Transportation of New York City were not state employees but were city employees, the Board was held to be a state instrumentality. Ferdinand v. Moses,26 N.Y.S.2d 382 (N.Y. 1941). Where a statute created a bridge authority to acquire an international bridge which it bought with the cooperation of the Canadian government, the Authority was held to be a state agency. People ex rel. Buffalo and Fort Erie PublicBridge Authority v. Davis, 14 N.E.2d 74 (N.Y.App. 1938).
It has also been held that the Board of Commissioners of the Port of New Orleans is a "state agency." Hartwig Moss Ins. Agency,Limited v. Board of Com'rs of Port of New Orleans, 19 So.2d 178 (La. 1944). Likewise, housing authorities have been held to be state agencies for certain purposes. People ex rel. Stokes v. Newton,101 P.2d 21 (Colo. 1940). In New Jersey, it has been held that the Turnpike Authority was a state agency for bond act purposes.Morris County Industrial Park v. Thomas Nicol Co., 173 A.2d 414
(N.J. 1961). And in New Jersey, it was held that the Port of New York Authority, a bi-state corporation created by a compact between the states of New York and New Jersey, is a direct state agency and an alter ego of the state. Miller v. Port of New YorkAuthority, 15 A.2d 262 (N.J. 1939).
It was also held in New Jersey that a New Jersey member of the Waterfront Commission of New York Harbor, a bi-state agency created by a compact between the legislatures of New York and New Jersey and approved by an act of Congress, was not a "state officer" and the Commission was not a state agency as to which the New Jersey conflicts of interest law was applicable. De Rose v.Byrne, 343 A.2d 136 (Super.Ct. N.J. 1975) vacated for mootness353 A.2d 100 (Super.Ct. N.J. 1976).
The court stated, however, at l.c. 142:
 "As the product of an interstate compact, the Waterfront Commission is not a single state agency created and exclusively controlled by one state. It is an instrumentality of the States of New York and New Jersey, and beyond being an agent of each state it is an agent of both of them (citations omitted). . ."
This office has held that the Kansas City Area Transportation Authority is not a state agency within Section 29.200, RSMo 1969, relating to the post-audit of accounts of state agencies by the State Auditor. Opinion No. 142 dated July 24, 1975, to Lehr. This office also held in Opinion No. 20A dated April 24, 1970, to Kirkpatrick that the State Records Act, as found in Sections 109.200,et seq., RSMo, does not apply to the Kansas City Area Transportation Authority.
It is clear from the body of law we have reviewed that the terms "state agency" or "state instrumentality" are often given a restrictive meaning where the application of particular state laws are concerned, but nevertheless are defined broadly where it is intended to characterize the nature of a body created to perform governmental functions, either directly or in conjunction with another sovereign.
In light of the cases we have reviewed, it is our conclusion that although the Kansas City Area Transportation Authority is by statute denominated a "political subdivision," such denomination is not determinative as to the Authority's legal status. Clearly, the authority is an agency and an instrumentality of the states of Missouri and Kansas created by compact between such states with congressional approval.
Your second question asks as to the effective date of the creation of the Kansas City Area Transportation Authority. However, the real import of your question is whether or not the effective date was prior to the date of October 16, 1968, after which such entities are entitled to retain interest earned on federal grants. Inasmuch as the Compact was executed in December, 1965, and received congressional approval in September, 1966, it is clear that no matter which date is taken to be the effective date of the creation of the Authority, interest would be due from the date of October 16, 1968, the effective date of Section 203 of the Intergovernmental Cooperation Act of 1968 because the Kansas City Area Transportation Authority was obviously in existence prior to October 16, 1968.
Very truly yours,
 JOHN ASHCROFT Attorney General