REQUESTED BY: Dear Senator Schmit:
In your letter of February 9, 1979, you requested our opinion on the constitutionality of LB 515, legislation intended to ratify the Interstate Compact on Agricultural Grain Marketing. According to the introducer's statement of purpose, the compact set out in LB 515:
 ". . . is the culmination of a number of meetings held in Topeka, Kansas over the [legislative] interim.
 "The purpose of the compact is to protect, preserve and enhance the production and marketing of grain."
In commenting upon the constitutionality of this legislation, the overriding question is whether or not the United States Congress has given its assent, or will give its assent, expressly or by implication, to this compact between two or more states.
The United States Constitution, at Article I, section 10, clause 3, forbids any state of the union, without the consent of Congress, to enter into any agreement or compact with another state. Subject to the consent of Congress, however, it is well settled that states may enter into such compacts as they see fit. 72 Am.Jur.2d, States § 5 at 410 (1974). Consequently, such compacts have been upheld against various federal and state constitutional objections. Among the class of compacts which have been recognized and upheld by the courts are agreements between states in regard to boundary lines, water rights and fishing privileges, construction and maintenance of bridges, the creation of a council of state governments, the adjustment of land grants, and the creation of interstate commissions to control river pollution. 72 Am.Jur.2d, supra at 411.
The consent of Congress to compacts between two or more states may be sufficiently indicated, when it is not necessary to be made in advance, by the adoption or approval of proceedings taken under the compact. Moreover, the approval of Congress in regard to a compact between the states need not be an express and formal statement or assent to the agreement, but rather such approval may be illustrated by satisfactory inference from a congressional act which implies such consent. Id. Consequently, the states which are parties to a compact assume, by accepting the compact and acting under it, any conditions which Congress, acting under the United States Constitution, has attached, expressly or impliedly, to the compact.
Id.; Petty v. Tennessee-Missouri Bridge Commission,359 U.S. 275, 3 L.Ed.2d 804, 79 S.Ct. 785 (1959).
In the Petty decision, the United States Supreme Court explained the legal rationale and historical basis for requiring congressional consent before such compacts become effective upon the membership states.
 "`Historically the consent of Congress, as a prerequisite to the validity of agreements by States, appears as the republican transformation of the needed approval by the Crown. But the Constitution plainly had two very practical objectives in view in conditioning agreement by States upon consent of Congress. For only Congress is the appropriate organ for determining what arrangements between States might fall within the prohibited class of `Treaty, Alliance, or Confederation', and what arrangements come within the permissive class of `Agreement or Compact.' But even the permissive agreements may affect the interests of States other than those parties to the agreement: the national, and not merely a regional, interest may be involved. Therefore, Congress must exercise national supervision through its power to grant or withhold consent, or to grant it under appropriate conditions. . . .'"
 Petty v. Tennessee-Missouri Bridge Commission, supra, 3 L.Ed.2d at 810, n. 7.
Therefore, while on its face LB 515 does not appear to raise this constitutional problem, we would caution you that the express or implied consent of Congress is necessary before the referenced compact between the states can become enforceable and binding upon the various members of the compact.
We have, however, noted a constitutional problem in respect to the provisions of Article III of LB 515 wherein the bill provides for procedures for the appointment of members to the Interstate Agricultural Grain Marketing Commission. The bill allows for one member of the Commission to be appointed by the Governor, and further provides as follows:
 ". . . one senator appointed in the manner prescribed by the senate of such state, except that two senators may be appointed from the unicameral legislature of the state of Nebraska; . . ."
The power to appoint persons to offices which are established or created by law is generally reserved to the chief executive officer of a state, the Governor. Section10 of Article IV of the Constitution of Nebraska provides, in pertinent part, as follows:
 "The Governor shall appoint with the approval of a majority of the Legislature, all persons whose offices are established by the Constitution, or which may be created by law, and whose appointment or election is not otherwise by law or herein provided for; and no such person shall be appointed or elected by the Legislature. . . ." (Emphasis added.)
In interpreting the foregoing provision, the Nebraska Supreme Court has held, for example, that the designation by the Legislature of University of Nebraska officers as members of a natural resources commission was a legislative appointment in violation of the Nebraska Constitution.Neeman v. Nebraska Natural Resources Commission, 191 Neb. 672,217 N.W.2d 166 (1974).
In light of the above constitutional and judicial guidelines, we are of the opinion that that portion of Article III of LB 515, which provides that two senators may be appointed from the unicameral, would probably not survive a constitutional challenge in the courts of Nebraska.
We would add one other cautionary note in respect to the creation of and powers given to the Interstate Agricultural Grain Marketing Commission at Article III of LB 515. We note that the legislation provides that the Commission may require by subpoena the attendance of persons domiciled within the membership states in respect to studies or investigations conducted by the Commission. Requiring such attendance for the purpose of giving testimony, or requiring by subpoena duces tecum the production of certain documents is effectuated by the Commission's application to a court of proper jurisdiction. We would simply point out that, in our opinion, the ability of the Commission to require testimony or documentary production, by application to a court of competent jurisdiction, is no greater than any other party's ability to implement the judicial process. In other words, a compact between various states, or between a state and the United States, cannot enlarge or diminish constitutional rights. 72 Am.Jur.2d, supra at 413. We assume, therefore, that Article III of LB 515 reserves the power of requiring testimony and documentary production to the courts, as opposed to the Commission.
We trust that the above discussion has answered the questions you raised in your correspondence of February 9, 1979.