**ENTERGY ARKANSAS, INC.,**
**an Arkansas corporation,**
**et al., Plaintiffs,**

**Central Interstate Low–Level Radioactive Waste Commission,**
**Realigned Plaintiff,**

**US Ecology, Inc., a California corporation, (USE), Intervenor–Plaintiff,**

v.

**State of NEBRASKA, et al., Defendants.**

**No. 4:98CV3411.**

United States District Court,
D. Nebraska.

Feb. 22, 2002.

John P. Heil, Thomas E. Johnson, Patrick J. Ickes, Baird, Holm Law Firm, Omaha, NE, Stephen M. Bruckner, Joseph E. Jones, Fraser, Stryker Law Firm, Omaha, NE, for plaintiffs.

Alan E. Peterson, Shawn D. Renner, Cline, Williams Law Firm, Lincoln, NE, Patrick T. O'Brien, Butler, Galter Law Firm, Lincoln, NE, for realigned plaintiffs.

Steven G. Seglin, Rocky C. Weber, Crosby, Guenzel Law Firm, Lincoln, NE, Rene M. Devlin, Laurence H. Levine, Latham, Watkins Law Firm, Chicago, IL, for intervening plaintiffs.

Patrick T. O'Brien, Butler, Galter Law Firm, William Bradford Reynolds, Howrey, Simon Law Firm, Washington, DC, Annette M. Kovar, Neb. Dept. of Environmental Quality, Lincoln, NE, John L. Wittenborn, Collier, Shannon Law Firm, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

With respect to the suit by the Central Interstate Low–Level Radioactive Waste Commission (Commission), Magistrate Judge Piester struck the jury demand of the State of Nebraska and related Nebraska officials (Nebraska Defendants). The Nebraska Defendants appeal, and they also request in their brief that I certify the question for interlocutory appeal in the event I disagree with them. Presuming a

knowledge of this complex case [1], I affirm Judge Piester's decision striking the jury demand. I also decide that certification is not appropriate.

## I.

The Commission sued the Nebraska Defendants contending they breached obligations owed under the Central Interstate Low–Level Radioactive Waste Compact (the Compact), which Nebraska, Arkansas, Kansas, Louisiana, and Oklahoma had joined in 1986. In the Compact, the states agreed to develop disposal facilities for low-level nuclear waste generated within their borders, and in 1989 the Commission selected Nebraska as the host state for such a facility.

The Commission alleges that Nebraska has attempted to evade its obligations under the Compact since 1991, by delaying the decision on a license for the proposed facility and by then wrongfully denying a license. The Commission seeks injunctive relief, a declaratory judgment that Nebraska has violated its fiduciary and contractual obligations under the Compact, an accounting, compensatory and consequential damages [2], the removal of Nebraska from further supervision of the licensing process and appointment of a third party to exercise supervision, and attorney fees and costs.

Congress passed the Low–Level Radioactive Waste Policy Act of 1980 (the Act), 42 U.S.C. § 2021b *et seq.* (1994) (amended 1986), "to promote the development of regional low-level radioactive waste disposal facilities." *Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n,* 970 F.2d 421, 422 (8th Cir.1992). Under the authority of the Act the member states entered into the Compact, which was passed as original legislation by each of the states and by Congress. *See* Omnibus Low–Level Radioactive Waste Interstate Compact Consent Act, Pub.L. 99–240, tit. II, sec. 222, 99 Stat. 1859, 1863 (1986) (reprinting the Compact hereinafter referred to by article).[3]

The Compact established the Commission to enforce its provisions and provided the framework for licensing a facility for the disposal of low-level radioactive waste generated in the five states. *See* ART.'s III and IV. Several provisions address performance of obligations imposed by the Compact. Each of the states has "the right to rely on the good faith performance of each other party state." ART. III(f). The state selected as the host for a disposal site is required "to process all applications for permits and licenses required for the development and operation of any regional facility or facilities within a reasonable period from the time that a completed application is submitted." ART. V(e)(2). By filing suit, among other methods, the Commission is explicitly commanded to "require all party states . . . to perform their

---

**1.** The most recent opinion of the Court of Appeals is *Entergy Arkansas, Inc. v. Nebraska,* 241 F.3d 979 (8th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 203, 151 L.Ed.2d 144 (2001) (despite claim for damages, affirming decision that the Eleventh Amendment did not preclude the Commission's suit against Nebraska; reversing decision denying qualified immunity to individual defendants; reversing decision that private corporations' complaints stated a claim under an interstate compact; remanding for reconsideration of motions to dismiss private corporations' due process claims). The most recent published opinion

of this court is *Entergy Arkansas, Inc., v. Nebraska,* 161 F.Supp.2d 1001 (D.Neb.2001) (holding that private corporations did not have due process-protected "property interest" in license or money spent to obtain it and dismissing those claims).

**2.** No personal liability is asserted against State officials.

**3.** The Central Interstate Low–Level Radioactive Waste Compact is also found at Appendix § BB, Neb.Rev.Stat. Vol. 2A (Reissue 1989).

duties and obligations arising under this compact[.]" Art. IV(m)(8).

The claims of the other plaintiffs against the Nebraska Defendants are not at issue in this appeal. The only question in this appeal is whether the Nebraska Defendants are entitled to a jury trial on the Commission's claims.

## II.

■ Judge Piester struck the Nebraska Defendants' jury demand because he believed that "while the Commission is now requesting compensatory damages[4] for Nebraska's alleged lack of good faith and breaches of fiduciary duty in performance of the Compact, historically these issues would have been tried without a jury." (Filing 351 at 4.) I agree with Judge Piester.

■ The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. We look to the English common law at the time the amendment was adopted to decide "whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." *Markman v. Westview Instruments*, 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citing *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). If, at the time of the Founding, the action was not tried at law and it is not analogous to one that was, there is no right to trial by jury. *Tull*, 481 U.S. at 417, 107 S.Ct. 1831 ("those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial").

After careful consideration, I find and conclude that suits predicated upon an interstate compact, brought by a creature created by the compact against a signatory state to enforce its terms, were not tried to a jury at the Founding. I also find and conclude that there are no analogous cases that were tried to a jury at the Founding. Therefore, the Nebraska Defendants are not entitled to a jury trial.

■ At one level, this is a dispute between Nebraska, on the one hand, and Arkansas, Kansas, Louisiana, and Oklahoma, represented by the Commission, on the other. The Constitution established two methods for resolving these types of disputes. *Petty v. Tennessee–Missouri Bridge Comm'n*, 359 U.S. 275, 279 n. 5, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The first method is the original jurisdiction conferred upon the Supreme Court by the Constitution. *Id.* (citing U.S. Const. art. III., § 2). "The other is the compact. . . ." *Id.* (citation omitted).

■ As for the first method, we know that when the Supreme Court exercises its original jurisdiction there is no jury trial even if money is awarded against a state. *Texas v. New Mexico*, 482 U.S. 124, 130, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987) (holding that monetary relief could be awarded against New Mexico because it acted in bad faith by failing to deliver water called for by a compact).

The second method of resolving disputes between states is found in the Compact Clause. U.S. Const. art. I, § 10, cl. 3.[5] As

---

4. As earlier noted, the Commission also seeks a declaratory judgment that Nebraska has violated its fiduciary and contractual obligations under the Compact, an accounting, the removal of Nebraska from further supervision of the licensing process and appointment of a

third party to exercise supervision of the licensing process.

5. "No State shall, without the consent of Congress, . . . enter into any Agreement or Compact with another State, or with a foreign Power. . . ."

I have previously indicated in a related context[6], the primary historical authority on the Compact Clause is found in the work of Felix Frankfurter & James M. Landis, *The Compact Clause of the Constitution—A Study in Interstate Adjustments*, 34 Yale L.J. 685, 691–92 (1925) ("The Compact Clause of the Constitution").[7]

According to Frankfurter and Landis, the Compact Clause finds its historical roots in the method used by the Crown to resolve disputes between colonies. *The Compact Clause of the Constitution*, at 694. The "framers were familiar with the modes of settlement [between colonies] prior to the Revolution...." *Id.* If the colonies had a dispute that they could not resolve by agreement (which agreement required approval of the Crown), then the only method for resolving the dispute "was an appeal to the Crown, followed normally by a reference of the controversy to a Royal Commission." *Id.* at 693. If the Royal Commission's decision was not acceptable, then "an appeal lay to the Privy Council" because the Crown was normally too busy to hear those disputes directly. *Id.* Thus, the colonial method of settlement of disputes was not even judicial, let alone one tried at law. Also, there is no evidence that the Royal Commission, the Privy Council or the Crown itself were served by, or functioned as, a jury when there was dispute between the colonies.

From this review of the alternative methods of resolving disputes between the states set forth in the Constitution at the time of the Founding, two things are clear. First, even when awarding money against a state, the Supreme Court resolves disputes between states without a jury. Second, there is no historical evidence that the method of resolving colonial disputes, which method was transformed into the Compact Clause of the Constitution, involved law actions or juries.

As a result, there is no historical basis for contending that compact disputes such as this one were tried to juries at the Founding. In fact, whether from the Founding or otherwise, the Nebraska Defendants have not directed me to a single case in which a jury was selected to hear a dispute regarding the terms of an interstate compact when the litigants were parties to, or creatures created by, a compact.

Realizing that they cannot establish that this type of dispute was, at the time of the Founding, tried at law, the Nebraska Defendants argue by analogy that cases such as this are covered by the Seventh Amendment. Specifically, the Nebraska Defendants assert that this case is most like a breach of contract action where money is sought. They assert that contract actions were tried to juries at common law.[8]

---

**6.** *Entergy Arkansas, Inc., v. State of Nebraska,* 68 F.Supp.2d 1093, 1097–98 (D.Neb.1999) (Commission's suit was not barred by the Eleventh Amendment), *aff'd,* 241 F.3d 979, 987–88 (8th Cir.2001).

**7.** The early history of the Compact Clause is also described in *Virginia v. West Virginia,* 246 U.S. 565, 597–602, 38 S.Ct. 400, 59 L.Ed. 1272 (1918) (holding that the Court had the power to enforce a $12 million judgment, recommended by a special master and adopted by the Court, in favor of Virginia and against West Virginia). *See also United States Steel Corp. v. Multistate Tax Comm'n,* 434 U.S. 452, 460–72, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978) (describing early and more recent history).

**8.** Even when money was involved, it is not true that all, or even most, contract actions were tried to juries at the time of the Founding. *See Burlington Northern Railroad Company v. Nebraska Public Power District,* 931 F.Supp. 1470, 1481, 1484–85 (D.Neb.1996) (noting that it is difficult and sometimes impossible to determine whether a particular contract action would have been tried to a jury at the time of the Founding; listing broad categories of contract actions that were or were not tried to juries at the Founding; denying jury trial even though public power district sought money under a contract). For

 

Therefore, they claim a right to a jury in this case.

█ I reject the analogy that this case is like a breach of contract case for purposes of the Seventh Amendment. While it is true that a Compact is a contract between States, it is also true that a Compact is much more. As the Supreme Court has made clear, the "requirement of congressional consent is at the heart of the Compact Clause." *Cuyler v. Adams*, 449 U.S. 433, 439, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). "By vesting in Congress the power to grant or withhold consent, or to condition consent on the States' compliance with specific conditions, the Framers sought to ensure that *Congress would maintain ultimate supervisory power over cooperative state action that might otherwise interfere with the full and free exercise of federal authority.*" *Id.* at 439–40, 101 S.Ct. 703 (citing *The Compact Clause of the Constitution*, at 694–95) (emphasis added).

What is at stake, then, is not a mere contractual promise but rather Congressional control over Nebraska's behavior regarding the disposition of low-level nuclear waste. *Congress required* that Nebraska exercise "good faith" when deciding whether to issue a license. ART III(f). *Congress also required* that the Commission enforce that obligation if Nebraska failed. ART. IV(m)(8). I reject the implausible notion that a jury comprised of Nebraska citizens was intended by the Framers to decide whether Nebraska satisfied the obligations imposed by Congress under the exclusive power that the Framers gave to Congress under the Compact Clause. Congressional conditions and the national interest related thereto, not contractual promises, are the focal point of this litigation.

In summary, actions like this one were not tried at law when the Constitution was signed. There is also no appropriate historical analogy to law cases upon which one might fairly compare this case. Accordingly, the Seventh Amendment does not entitle the Nebraska Defendants to a jury trial even though money damages, among other modes of relief, are sought by the Commission for the alleged violation of Nebraska's congressionally imposed obligations under the Compact.

### III.

Anticipating that I might disagree with them, the Nebraska Defendants request that I certify this question for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). I decline to do so. Respectfully, there is no controlling question of law upon which there is a substantial ground for difference of opinion.

Accordingly,

IT IS ORDERED that:

1. The Nebraska Defendants' appeal from the order striking their jury demand (filing 367) is denied; and

2. The request for certification set forth in the Nebraska Defendants' brief is denied.

---

present purposes, I need not debate this point because even if I assume that each and every contract action was tried to a jury at the

Founding, I do not believe that the contract analogy put forth by the Nebraska Defendants is proper.