Lorraine YANCOSKIE, Administratrix of the Estate of Francis J. Yancoskie, et al., Plaintiffs,

v.

DELAWARE RIVER PORT AUTHORITY, Defendant.

Civ. A. No. 74-851.

United States District Court, D. New Jersey.

Dec. 4, 1974.

Robert A. Ebenstein, Cherry Hill, N. J., for plaintiffs.

Orlando, Yampell, Forgash & Slimm, P. A. by Elliott Yampell, Haddonfield, N. J., for defendant.

## OPINION

COHEN, Senior District Judge:

▮ The question for decision in this case is whether New Jersey and Pennsylvania have waived their sovereign immunity under the Eleventh Amendment by entering into the congressionally sanctioned interstate compact which created the Delaware River Port Authority.

Lorraine Yancoskie commenced this action as administratrix of her husband's estate, on behalf of her son, and in her own right, to recover damages for the death of her husband, which occurred during the course of the construction of a bridge by the defendant. The complaint does not indicate in what capacity the decedent was employed when he allegedly received an electric shock and fell from the bridge. It simply alleges that the decedent's death was the result of defendant's negligence. From a reading of the complaint, it would appear that plaintiff would have this court exercise its jurisdiction pursuant to 28 U.S.C. § 1332. Defendant, Delaware River Port Authority, moves to dismiss the complaint for lack of jurisdiction, and for failure to state a claim upon which relief can be granted.

▮ The Authority makes three arguments in support of its motion. First, it maintains that the Authority is not a "citizen" within the meaning of 28 U.S.C. § 1332.[1] It contends that under the law of Pennsylvania it is considered the "alter ego" of the state. It is well settled that neither a state, nor its "alter ego," is a "citizen" within the meaning of § 1332. *See* Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

The second argument posited by the Authority is that it is a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey." N.J.S.A. § 32:3–2; 36 P.S. § 3503.

---

1. 28 U.S.C. § 1332 provides in relevant part:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

 (1) citizens of different States;

 . . . .

 (c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

The Authority urges that even if this court were to hold that it is a "citizen" for purposes of § 1332, its dual corporate citizenship would preclude a finding that diversity of citizenship exists when, as here, the plaintiff is a citizen of Pennsylvania.

The Authority's third contention is couched in the form of a motion to dismiss for failure to state a claim upon which relief can be granted. Assuming this court has jurisdiction, the Authority claims that it is cloaked with sovereign immunity under the aegis of Pennsylvania law.

■ This court need not decide the questions of whether the Authority is a "citizen" within the meaning of § 1332, or whether diversity of citizenship exists between plaintiff, a Pennsylvania citizen, and the Authority, a corporate citizen of both Pennsylvania and New Jersey. We have concluded that there is yet another jurisdictional base upon which this court may act. The Delaware River Port Authority was created pursuant to the Compact Clause of the Constitution, Art. I, § 10, Cl. 3,[2] and approved by Congress. 49 Stat. 1058. The construction of an interstate compact approved by Congress presents a federal question. Petty v. Tennessee-Missouri Comm'n, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); Delaware River Comm'n v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940). The facts of the Petty case are strikingly similar to those present here. Petty also involved a joint state bridge commission created pursuant to the Compact Clause and the question before the court was whether the Compact constituted a waiver of the Eleventh Amendment immunity of the contracting states.

The Court in Petty provided some indication as to what law governed the interpretation of compacts such as the one involved here:

"The construction of a compact sanctioned by Congress under Art. I, § 10, Cl. 3 of the Constitution presents a federal question (citation omitted). Moreover, the meaning of a compact is a question on which this Court has the final say (citation omitted). The rule is no different when the contention is that a State has, by compact, waived its immunity from suit . . . [W]here the waiver is, as here, claimed to arise from a compact between several States, the Court is called on to interpret not unilateral state action but the terms of a consensual agreement, the meaning of which, because made by different States acting under the Constitution and with congressional approval, is a question of federal law." 359 U.S. at 278, 79 S.Ct. at 788.

In a footnote the Court indicated that:

"While we show deference to state law in construing a compact, state law as pronounced in prior adjudications and rulings is not binding." 359 U.S. at 278, n. 4, 79 S.Ct. at 788.

■ State law, therefore, may be consulted; however, it does not necessarily govern the result.

In Petty, supra, Justices Black, Clark, and Stewart concurred in the judgment of the Court "with the understanding that we do not reach the constitutional question as to whether the Eleventh Amendment immunizes from suit agencies created by two or more States under state compacts which the Constitution requires to be approved by the Congress." 359 U.S. at 283, 79 S.Ct. at 791. Justices Frankfurter, Harlan and Whittaker dissented.

Thus, Petty is a case which must be viewed in light of its facts, and does not represent a broad abrogation of Eleventh Amendment immunity by a state's entrance into an interstate compact.

·The Delaware River Port Authority was created pursuant to legislative approval by the respective governing bodies of Pennsylvania and New Jersey and

2. "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State . . . .."

approved by Congress. 49 Stat. 1058. The approval by Congress contained the following relevant language:

"Sec. 9: Provided, That nothing herein contained shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States or of any court, department, board . . . of the United States, over or in regard to any navigable waters, or any commerce between the States or with foreign countries, or any bridge, railroad, highway . ., forming the subject matter of the aforesaid compact or agreement or otherwise affected by the term thereof." 49 Stat. 1058.

Art. II, Sec. 3(b) authorizes the Authority "to sue and be sued." 49 Stat. 1060.

Art. II, Sec. 3(p) grants the following power to the Authority:

(p) " . . . and generally to exercise, in connection with its property and affairs and in connection with property under its control, any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs." 49 Stat. 1060.

It is well settled that "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction (citation omitted).'" Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974). The question in *Edelman* was whether the State of Illinois had constructively consented to suit by participation in the federal AABD[3] program and agreeing to administer federal and state funds in compliance with federal law. The Court found that it had not, but in doing so it distinguished the following cases in which a waiver was found. Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Employees v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), and *Petty, supra.* The Court characterized *Parden, Employees,* and *Petty* as follows:

"Both *Parden* and *Employees* involved a congressional enactment which by its terms authorized suit by designated plaintiffs against a general class of defendants which literally included States or state instrumentalities. Similarly, Petty v. Tennessee-Missouri Bridge Comm'n, *supra,* involved congressional approval, pursuant to the Compact Clause, of a compact between Tennessee and Missouri, which provided that each compacting State would have the power 'to contract, to sue, and be sued in its own name.' The question of waiver or consent under the Eleventh Amendment was found in those cases to turn on whether Congress had intended to abrogate the immunity in question, and whether the State by its participation in the program authorized by Congress had in effect consented to the abrogation of that immunity." 415 U.S. at 672, 94 S.Ct. at 1360.

*Petty* and the instant case, therefore, represent a unique exception to the usual type of Eleventh Amendment situation. In deciding this issue the language of the compact must be construed. It can hardly be doubted that the Authority is engaged in interstate commerce. Section nine of the compact, *supra,* indicates that the jurisdiction of the federal judiciary over interstate commerce or any bridge forming the subject matter of the compact was not to be impaired. The compact involved in *Petty* contained similar language. This case, like *Petty* involves a compact which contains a "sue and be sued" clause. The Delaware river is a navigable stream

3. AABD: Aid to the Aged, Blind and Disabled.

to which the commerce power certainly extends.

Parden v. Terminal R. Co., *supra*, involved the question of "whether a State that owns and operates a railroad in interstate commerce may successfully plead sovereign immunity in a federal-court suit brought against the railroad by its employee under the Federal Employers' Liability Act." 377 U.S. at 184, 84 S.Ct. at 1208.

The Court pointed out that:

"The broad principle of the *Petty* case is thus applicable here: Where a State's consent to suit is alleged to arise from an act not wholly within its own sphere of authority but within a sphere—whether it be interstate compacts or interstate commerce—subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law. Here, as in *Petty*, the States by venturing into the congressional realm 'assume the conditions that Congress under the Constitution attached.' (citation omitted)". 377 U.S. at 196, 84 S.Ct. at 1215.

█ Congress could have created a federal agency to perform the functions now performed by the Authority. Had it done so, the United States would have been liable in tort. Federal Tort Claims Act, 28 U.S.C. § 1346(b). That Congress allowed the Authority to perform what is essentially a federal function is a persuasive reason for construing its liability for negligent acts as broadly as the liability of a federal agency.

There is still another factor to be considered. New Jersey has recently enacted the New Jersey Tort Claims Act, N.J.S.A. § 59:1–1 et seq. which, under certain conditions specified therein, permits suits against the sovereign.[4] Pennsylvania, on the other hand, seems to cling, albeit precariously, to the doctrine of sovereign immunity. Brown v.

Commonwealth of Pennsylvania, 453 Pa. 566, 305 A.2d 868 (1973); Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A.2d 877 (1973). This presents the possibility that a multi-state agency created pursuant to an Act of Congress could be sued in one of its constituent jurisdictions but not in the other. In light of the "sue and be sued" language of the interstate compact, *supra,* it is unlikely that such a result was intended.

Upon consideration of the language of the compact, and the authorities discussed above, it is the opinion of this court that it has jurisdiction of this matter and, further, that the defense of sovereign immunity is not available to the Authority.

The motions to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted are hereby denied.

An appropriate order may be submitted.

---

4. This court intimates no opinion as to whether by enacting N.J.S.A. § 59:1–1 et seq., New Jersey has consented to be sued in the federal courts. *See* Great Northern Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1943).