**Max PIEVSKY, Plaintiff,**

v.

**Thomas J. RIDGE, in his capacity as the Governor of Pennsylvania, Defendant.**

**Civil Action No. 1:CV–96–011.**

United States District Court, M.D. Pennsylvania.

April 12, 1996.

Richard A. Sprague, Philadelphia, PA, Peter Konolige, David S. Lubin, Sprague & Sprague, Philadelphia, PA, for plaintiff.

Gregory E. Dunlap, Office of General Counsel, Deputy General Counsel, Harrisburg, PA, Eric L. Settle, Stephanie A. Middleton, Office of General Counsel, Harrisburg, PA, for defendant.

## *MEMORANDUM*

RAMBO, Chief Judge.

### I. *Introduction*

Plaintiff Pievsky originally filed this action by order to show cause on January 23, 1996, in the Commonwealth Court of Pennsylvania. Plaintiff sought a temporary restraining order and preliminary injunction prohibiting Defendant Ridge from dismissing him from his position as a Delaware River Port Authority (DRPA) Commissioner. The underlying complaint seeks a declaratory judgment that Plaintiff is entitled to remain in his position as a DRPA Commissioner until the expiration of his term on December 28, 1999, and permanent injunctive relief enjoining Defendant from removing him from his post prior to that time. Because the relief Plaintiff seeks raises a question of federal law, pursuant to 28 U.S.C. § 1331 Defendant

Ridge removed the case to this court on the same day it was filed in state court.

On January 25, 1996, the court held a hearing on Plaintiff's request for a temporary restraining order and preliminary injunction. At the hearing, Defendant Ridge agreed not to remove Plaintiff from his position on the DRPA until the court reached its final decision. The parties concurred that a trial would not be necessary and agreed to stipulate to the relevant facts. The court imposed a briefing schedule with regard to the legal issues in the case and conducted oral argument on March 28, 1996. This memorandum and accompanying order constitute the court's conclusions of law regarding Plaintiff's entitlement to remain as a Commissioner of the DRPA until the expiration of his term on December 28, 1999.

## II. *Stipulated Facts*

The following facts have been stipulated to by the parties.

The DRPA derives its authority from the DRPA Compact, an interstate agreement between the Commonwealth of Pennsylvania and the State of New Jersey. The Compact was originally enacted by the Pennsylvania and New Jersey legislatures in 1931 and is codified in reciprocal statutes at Pa.Stat.Ann. tit. 36, § 3503 (1995) and N.J.Stat.Ann. §§ 32: 3–1 to 3–18 (West 1995). As required by the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 3, Congress originally consented to the terms of the Compact in 1932 and thereafter consented to amendments in 1952 and 1992. *See* 47 Stat. 308; 66 Stat. 738; 106 Stat. 3576.

Article II of the Compact provides that the DRPA Commission "shall consist of sixteen commissioners, eight resident voters of the Commonwealth of Pennsylvania, and eight resident voters of the State of New Jersey. . . ." Compact art. II. The Compact also states:

[s]ix of the eight commissioners for the Commonwealth of Pennsylvania shall be

appointed by the Governor of Pennsylvania for terms of five years. The Auditor General and the State Treasurer of said Commonwealth shall, *ex-officio*, be commissioners for said Commonwealth, each having the privilege of appointing a representative to serve in his place at any meeting of the commission which he does not attend personally.

\*     \*     \*     \*     \*     \*

All commissioners shall continue to hold office after the expiration of the terms for which they are appointed or elected until their respective successors are appointed and qualify, but no period during which any commissioner shall hold over shall be deemed to be an extension of his term of office for the purpose of computing the date on which his successor's term expires.

*Id.*

On December 28, 1994, former Governor of Pennsylvania Robert P. Casey appointed Plaintiff as a member of the DRPA.[1] The commission signed by the Governor states that Plaintiff shall hold office until December 28, 1999, "and until [his] successor is appointed and qualified, if [he] shall so long behave [him]self well." (Joint Ex. 1.)

On January 22, 1996, Plaintiff received a telephone call from Leslie Gromis, Director of Defendant Ridge's Office of Public Liaison. Ms. Gromis informed Plaintiff that Defendant was "disappointed" in his vote on January 17, 1996, on a new chairperson for the DRPA Board. Ms. Gromis further stated that if Plaintiff did not tender his resignation the next day, Defendant Ridge would make an appointment to the DRPA to replace him.

## III. *Discussion*

### A. The Governing Law

The issue before the court is one of statutory construction. Do the terms of the DRPA Compact entitle Plaintiff to remain as

---

1. In accordance with the statutory language of the Compact, throughout this memorandum, the court uses the term "DRPA" to refer to the DRPA Board and the DRPA Commission. The Board and the Commission are one in the same. *See*

Compact Art. XIII. Plaintiff is a member or Commissioner of the DRPA Board. The Board is "in charge of [the DRPA's] property and affairs." *Id.*

a Commissioner of the DRPA until the expiration of his term, or conversely, do the terms of the Compact prohibit Defendant from removing him prior to that time? [2]

The parties differ as to whether state or federal law governs the court's determination regarding Defendant Ridge's authority to remove Plaintiff prior to the expiration of his term. Plaintiff contends that federal law controls, although he concedes that to the extent state law is not inconsistent, the court may accord it some degree of deference. (Pl.'s Br. in Supp. at 8.) Defendant argues that although the court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, the terms of the DRPA Compact do not conflict with state law, and, therefore, the court must defer to the law of Pennsylvania in construing the Compact's provisions. The court's conclusion regarding the applicable law is consistent with the positions of both parties.

■ The DRPA was established pursuant to the DRPA Compact. Congressional consent to the Compact transformed it into federal law. *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981); *Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 278, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959). The court's interpretation of the terms of the Compact is, therefore, governed by federal law. *Cuyler,* 449 U.S. at 438, 101 S.Ct. at 706; *Petty,* 359 U.S. at 278, 79 S.Ct. at 788; *State ex rel. Dyer v. Sims,* 341 U.S. 22, 27–29, 71 S.Ct. 557, 560–61, 95 L.Ed. 713 (1951); *Delaware River Joint Toll Bridge Comm'n v. Colburn,* 310 U.S. 419, 427–28, 60 S.Ct. 1039, 1040–41, 84 L.Ed. 1287 (1940); *Alcorn v. Wolfe,* 827 F.Supp. 47, 52–53 (D.D.C.1993); *Yancoskie v. Delaware River Port Auth.,* 385 F.Supp. 1170, 1171–72 (D.N.J.1974), *rev'd on other grounds,* 528 F.2d 722 (3d Cir.1975). What is not clear, however, is to what extent the

court may look to the laws of Pennsylvania in construing the Compact's provisions. The Supreme Court's decisions holding that the interpretation of a congressionally sanctioned interstate compact presents a question of federal law provide some guidance on this issue.

In *Delaware River Joint Toll Bridge Comm'n v. Colburn,* the Supreme Court held that "the construction of [an interstate] compact sanctioned by Congress by virtue of Article I, § 10, Clause 3 of the Constitution, involves a federal 'title, right, privilege, or immunity.'" 310 U.S. at 427–28, 60 S.Ct. at 1040–41 (quoting 28 U.S.C. § 334). In *Dyer v. Sims,* the Court found that its authority to construe an interstate agreement was based on its duty to "determine the nature and scope of obligations" between states. 341 U.S. at 28, 71 S.Ct. at 560.

■ The Supreme Court's conclusion that the interpretation of a congressionally approved interstate agreement presents a question of federal law rests upon the need to "safeguard ... national interest[s]" that are necessarily affected when two or more states enter into agreements that potentially impact federal authority. *Id.* at 27–28, 71 S.Ct. at 560–61.[3] In order to fully ensure the protection of federal interests, the interpretation of an interstate compact necessarily must comport with federal law. For the Supreme Court to have held otherwise would have resulted in states acting as the final arbiters in interstate disputes regarding the meaning of congressionally approved interstate agreements. *Id.,* 341 U.S. at 28, 71 S.Ct. at 560. States would have held the power to unilaterally nullify compacts, and their terms would have been subject to varying interpretations.

The Supreme Court's decision in *Dyer* arose in precisely this context. In a decision

---

**2.** Plaintiff states in the complaint that he is seeking a declaratory judgment that he has the "unqualified right, absent misconduct, to remain in office until the expiration of his fixed term." (Compl. at ¶ 8.) However, Plaintiff's entitlement to remain in office until the end of his term necessarily depends upon whether or not Defendant has the authority to remove him prior to that time.

**3.** More recently, in *Cuyler v. Adams,* the Supreme Court noted that the Compact clause does not mandate congressional consent to an interstate compact when the agreement is not "'directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States.'" 449 U.S. at 440, 101 S.Ct. at 708 (quoting *United States Steel Corp. v. Multistate Tax Comm'n,* 434 U.S. 452, 468, 98 S.Ct. 799, 810, 54 L.Ed.2d 682 (1978)).

construing West Virginia's obligations under the Ohio River Valley Water Sanitation Compact, the West Virginia Supreme Court held certain aspects of the compact void based on provisions in the West Virginia Constitution. While noting that "every deference will be shown to what the highest court of a State deems to be the law and policy of its State, particularly when recondite or unique features of local law are urged," the *Dyer* Court held that the Supreme Court has "the final power to pass upon the meaning and validity of compacts." *Id.* In *Petty v. Tennessee–Missouri Bridge Comm'n,* the Supreme Court clarified *Dyer* by stating that "[w]hile we show deference to state law in construing a compact, state law as pronounced in prior adjudications and rulings is not binding." 359 U.S. at 278 n. 4, 79 S.Ct. at 788 n. 4 (citations omitted). *See also Alcorn,* 827 F.Supp. at 52–53 (noting that states may not unilaterally modify terms of congressionally approved interstate compacts and that compact terms take precedence over conflicting state law); *Yancoskie,* 385 F.Supp. at 1172 (state law may be consulted in construing compacts, but does not control).

The court notes that the application of federal law to the question at hand, whether the Governor of Pennsylvania may remove a Commissioner of the DRPA, seems somewhat inappropriate given the nature of the issue. Although it recognizes that in most instances the construction of an interstate compact involves issues of national importance, it is not clear to the court that the instant case raises such a concern. The question of whether or not the Governor has the authority to remove at will a member of the DRPA does not fall within the class of cases that have resulted in the clear precedent that the interpretation of a congressionally approved interstate compact presents a federal question and must proceed in accordance with federal law. Almost all of the cases that have resulted in the Supreme Court holding that federal law governs the construction of congressionally sanctioned interstate agreements involved issues that were central to the compacts' operations and therefore of national importance. *See Cuyler,* 449 U.S at 435, 101 S.Ct. at 705 (issue of whether incarcerated prisoners maintain right to pretransfer hearing before being transferred to another state pursuant to Article IV of Detainer Agreement); *Petty,* 359 U.S. at 280, 79 S.Ct. at 789 (question of whether states to compact waived immunity from suit); *Dyer,* 341 U.S. at 27, 71 S.Ct. at 560 (review of West Virginia Supreme Court's holding that state legislature's ratification of Ohio River Valley Sanitation Compact invalid). The court's concern in applying federal law to the case at hand stems from its reluctance to "dislodge" the laws of the Commonwealth of Pennsylvania which address what is primarily a matter of "local concern"—the ability of the Governor to remove a member of the DRPA. *See Petty,* 359 U.S. at 289, 79 S.Ct. at 794 (Frankfurter, J., dissenting) ("To imply from a congressional consent changes in the law of the Compact States of merely local concern ... would constitute a complete disregard of the purpose of the Constitution in requiring congressional consent to Compacts. Such disregard would introduce a wholly irrational disharmony in the application of local policy.").

■ Based on its review of the case law, the court concludes that federal law provides the ultimate rule of decision in its interpretation of the terms of the DRPA Compact. However, to the extent that Pennsylvania law does not conflict with federal case law and the terms of the Compact itself, the court will consult Pennsylvania law in conducting its analysis.

### B. Plaintiff's Entitlement to Remain as a DRPA Commissioner Until the Expiration of His Term in 1999

#### 1. Federal law

■ The Compact is silent regarding the removal of appointed commissioners. The long-standing rule in the context of federal appointments is that "in the face of statutory silence, the power of removal presumptively is incident to the power of appointment." *Kalaris v. Donovan,* 697 F.2d 376, 389 (D.C.Cir.1983) (citing *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *In re Hennen,* 38 U.S. (13 Pet.) 230, 10 L.Ed. 138 (1839)), *cert. denied,* 462 U.S.

1119, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983). Pennsylvania courts have also adopted this principle of law. *See American Federation of State, County, and Municipal Employees v. Shapp*, 443 Pa. 527, 280 A.2d 375, 377 (1971); *Commonwealth ex rel. Haymaker v. Black*, 201 Pa. 433, 50 A. 1008, 1009 (1902). Thus, the terms of the Compact on their face indicate that Defendant has the authority to remove Plaintiff prior to the end of his term.

In *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), the Supreme Court held that the legislature can by statute limit the power of an appointing authority to remove officials at will. *See also Watson v. Pennsylvania Turnpike Comm'n*, 386 Pa. 117, 125 A.2d 354, 356–57 (1956) ("It ... is established in this State beyond respectable controversy that, where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure and removal of an incumbent as it sees fit."). Plaintiff maintains that the terms of the DRPA Compact evidence an intent by the legislatures to limit Defendant's removal power, in that the statute states that six of Pennsylvania's Commissioners "shall be appointed by the Governor ... for terms of five years." Compact art II. Plaintiff cites *Humphrey's Executor, Wiener v. United States*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958), and *Borders v. Reagan*, 518 F.Supp. 250 (D.C.Cir.1981), *vacated as moot* 732 F.2d 181 (D.C.Cir.1982), in support of his argument. The court finds that the cases cited by Plaintiff are readily distinguishable from the facts of the present case and that federal law provides no support for such an interpretation of the Compact.

The issue in *Humphrey's Executor* was whether President Roosevelt could remove a member of the Federal Trade Commission (FTC). Pursuant to statute, Commissioners of the FTC were appointed for fixed rotating terms and were subject to removal for cause. 295 U.S. at 623, 55 S.Ct. at 872. In light of the statutory language limiting removal, the Supreme Court held that "the fixing of a definite term *subject to removal for cause* ... is enough to establish the legislative intent that the term is not to be curtailed in the absence of such cause." *Id.* (emphasis added). The statute at issue in *Humphrey's Executor* contained clear language limiting the removal authority of the President—language that is absent from the Compact. Additionally, an essential basis for the Supreme Court's holding in *Humphrey's Executor* was the "quasi-legislative" and "quasi-judicial" nature of the body whose member the President was attempting to remove. 295 U.S. at 624, 55 S.Ct. at 872. The DRPA cannot be classified as either a "quasi-legislative" or "quasi-judicial" body.

In *Wiener*, the Supreme Court prohibited President Eisenhower from removing a member of the War Claims Commission (WCC). 357 U.S. at 355–56, 78 S.Ct. at 1279. Congress had set up the WCC to adjudicate claims by United States citizens against Japan as a result of World War II. *Id.* at 354, 78 S.Ct. at 1278. The statute was silent with regard to the removal of members of the WCC and provided that their terms would expire simultaneously with the life of the Commission. *Id.* at 349, 78 S.Ct. at 1275. The Supreme Court concluded that the adjudicatory nature of the task imposed by Congress on the WCC lead to the conclusion that Congress did not leave room for the President to remove members and replace them with individuals of his own choosing. *Id.* at 357, 78 S.Ct. at 1279. The DRPA does not perform any tasks that can be classified as adjudicatory.

In *Borders*, the district court held that President Reagan could not remove at will a member of the District of Columbia Judicial Nominating Commission President Carter had appointed. 518 F.Supp. at 252. The statute at issue in *Borders* provided that the Commission would consist of seven members who "shall serve" for terms of six years, except for the member appointed by the President who "shall serve" for a term of five. *Id.* at 254. The statute made no provision for the removal of commission members. However, the district court found that the statute clearly contemplated that vacancies would occur only at the expiration of a given term. *Id.* at 255. In accordance with that view, the statute provided that for vacancies occurring "other than [upon] the expiration of a prior term," the new member would

serve only for the "**remainder** of the **unexpired term** of his predecessor." *Id.* (emphasis in original). The court concluded that the language of the statute indicated Congress' intent that "once an appointment is made . . . the member will serve a complete term." *Id.* On its face, the language of the DRPA Compact does not indicate, as the language of the statute in *Borders* did, that the legislatures contemplated that vacancies on the DRPA Board would occur only at the expiration of DRPA members' expired terms.[4]

Since federal law provides no support for an interpretation of the Compact which would limit Defendant's removal authority, as will be discussed below the court will defer to the law of Pennsylvania in construing the terms of the Compact. Before undertaking that analysis, however, further consideration of federal law is warranted.

Even if the court accepts Plaintiff's position that on its face the Compact restricts the Governor's removal authority, *Humphrey's Executor,* would require the court to look beyond the statutory language in assessing whether Defendant has the authority to remove at will. In *Humphrey's Executor,* the Supreme Court stated the question of whether "the power of the President to remove an officer shall prevail over the authority of Congress to condition the power by fixing a definite term and precluding removal for cause will depend upon the character of the office." 295 U.S. at 631–32, 55 S.Ct. at 875.[5] In *Morrison v. Olson,* the Supreme Court clarified the meaning of the "character of the office" inquiry that courts must undertake in assessing whether Congress has impermissibly restricted the executive branch's authority to remove an appointed official. 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).

The *Morrison* Court was faced with the question of whether the provisions of the Ethics in Government Act impermissibly restricted the Attorney General's ability to remove the independent counsel. In holding that the Act did not unconstitutionally limit removal, the Court stated that the legitimacy of congressional limitations on the chief executive's powers of removal turns upon "whether the removal restrictions are of such a nature that they impede the President's ability to perform his constitutional duty." *Id.* at 690–91, 108 S.Ct. at 2618–20. If the court were to reach this question, it would conclude that the Governor's inability to remove DRPA Commissioners prior to the expiration of their terms would impede his ability to carry out his functions as Chief Executive of the Commonwealth of Pennsylvania.

As Governor, Defendant is charged with ensuring that the laws of the state are "faithfully executed." Pa. Const. art. 2, § 2. Defendant's obligation to ensure the proper functioning of the DRPA is one of the duties charged to him pursuant to the Commonwealth's Constitution.

The DRPA is a public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey. Compact Art. I. The Third Circuit recently summarized the duties and responsibilities of the DRPA as follows:

> The DRPA was created, among other things, to operate and maintain the bridges owned jointly by Pennsylvania and New Jersey across the Delaware River and between the cities of Philadelphia and Camden. Under the Compact, the DRPA has the authority to construct and maintain facilities for the transportation of passen-

**4.** The court's decision in *Borders* rests on other grounds as well. The statute provided for staggered terms for six of the commissioners, which the court stated was evidence of Congress' intent that the members be isolated from political considerations and political changes. 518 F.Supp. at 255. Also, the facts that (1) the District of Columbia is under the exclusive control of Congress, (2) the statute specifically stated that the Commission was meant to remain independent, and (3) the Commission's duty was to nominate judges for the Superior Court of the District of Columbia were relevant to the court's holding. *Id.* at 253–57.

**5.** The court notes that the federal cases relied upon by the court which address the President's removal authority in the face of limiting Congressional legislation, have been cited by Pennsylvania courts in addressing executive removal authority and separation of powers issues in Pennsylvania. *See Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775, 784 (1987) (Papadakos, J., concurring); *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835, 838–39 (1963); *Bowers v. Pennsylvania Labor Relations Bd.,* 402 Pa. 542, 167 A.2d 480, 484–85 (1961).

gers, to improve and develop the Port District[6] for port purposes, and to promote commerce on the Delaware River. It may also establish, maintain, and operate a rapid transit system between certain points in New Jersey and Pennsylvania.

*Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1348 n. 2 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994).

*Peters* involved a claim by the Secretary of the DRPA that the Commission could not remove him from his position solely because he was a member of the New Jersey Republican Party. *Id.* at 1352. The Third Circuit stated the following about the nature and functions of the DRPA:

> The DRPA has broad powers, leaving much room for principled disagreement on policy goals and their implementation.
>
>   \*   \*   \*   \*   \*   \*
>
> The policy and political issues, including economic considerations, arising in an entity such as the DRPA are many. If tolls are raised, bridges fall into disrepair, or traffic is congested, there are surely political consequences. Whether decent roads and transit systems will be made available to all segments of the communities, or will be provided in a manner perceived as favoring some or excluding others, raises important and sensitive social, economic and political questions. The fact that the DRPA is composed of membership from two states does not alter or reduce the likelihood that these matters must be considered and dealt with. *Since the governors of New Jersey and Pennsylvania appoint fourteen of the sixteen member Board of Commissioners, political respon-*sibility for the DRPA's successes and failures can be expected to fall on the ruling administration of each state.

> The district court noted that the DRPA is not designed to further the political agenda of any one state or administration. But it does not follow from this that party affiliation is not appropriate to the effective performance of the higher positions within the DRPA. For example, if a particular policy would benefit both New Jersey and Pennsylvania, it would be important for those states to have in place officers who agreed with and furthered that policy. *Obviously, the party affiliation or policy views of the officers in the DRPA could be relevant to the effective presentation and implementation of particular policy goals.* If the states preferred huge increases in spending for the construction of bridges, for example, they might legitimately prefer that high positions in the DRPA not be filled with individuals belonging to a party which advocates decreased government spending.

*Id.* at 1352–53 (emphasis added). *Peters* recognizes that it is the member states which select the policy goals to be pursued by the DRPA. *Id.* at 1356 ("[E]ither state alone, or both states working together, might choose to accomplish broad economic goals at the DRPA...."). The foregoing language suggests that an integral aspect of the DRPA's proper functioning is the responsiveness of its members to the administrations of the Commonwealth of Pennsylvania and the State of New Jersey. It is through such responsiveness that the goals of each state are accomplished.[7] In order to ensure such responsiveness, Defendant must be imbued

---

**6.** "The Port District includes 'all the territory within the counties of Bucks, Chester, Delaware, Montgomery and Philadelphia in Pennsylvania, and all the territory within the counties of Atlantic, Burlington, Ocean and Salem in New Jersey.'" *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1348 n. 2 (3d Cir.1994) (quoting Compact art. XIII), *cert. denied,* —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994).

**7.** The Third Circuit's holding in *Peters* that the DRPA is not an arm of either of its member states and can be sued under 42 U.S.C. § 1983 is not inconsistent with the court's conclusion. *See Peters,* 16 F.3d at 1352. The court's determination that the proper functioning of the DRPA depends upon the responsiveness of its Board members to the ruling administrations of both states, does not conflict with the notion that the DRPA as a *body* is not an arm of either the

with the authority to remove Pennsylvania's appointed Commissioners.[8]

### 2. State law

Since pursuant to federal law, the court has concluded that the terms of the Compact do not prohibit Defendant from removing Plaintiff from his position on the DRPA prior to the expiration of his term, it is appropriate pursuant to *Dyer* and *Petty* to consult state law before reaching a final conclusion.

The removal of state officers in Pennsylvania is governed by the Commonwealth's Constitution which provides that "[a]ppointed civil officers, other than the judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed." Pa. Const. art. VI, § 7. In the absence of statutory language providing otherwise this constitutional provision governs the removal of appointed officials. *Watson,* 125 A.2d at 356–57. The legislature, of course, "may impose such terms and limitations with reference to the tenure and removal of an incumbent as it sees fit." *Id.* at 356. The Pennsylvania Supreme Court has held that where a statute provides for fixed terms with staggered expiration dates, the legislature intended that those appointed shall not be removable at the will of the appointing authority. *Id.* at 356–57; *see also Commonwealth ex rel. Sortino v. Singley,* 481 Pa. 367, 392 A.2d 1337 (1978); *Bowers,* 167 A.2d 480; *Commonwealth ex rel. Hanson v. Reitz,* 403 Pa. 434, 170 A.2d 111 (1961). In contrast, the Pennsylvania Supreme Court has held that the fixing of a definite term alone is insufficient to override the dictates of Article VI, § 7 of the Constitution. *See Schluraff v. Rzymek,* 417 Pa.

144, 208 A.2d 239 (1965); *see also Naef v. City of Allentown,* 424 Pa. 597, 227 A.2d 888 (1967); *Commonwealth ex rel. Schofield v. Lindsay,* 330 Pa. 120, 198 A. 635 (1938). The Pennsylvania Supreme Court's holdings on this issue demonstrate that it is the staggering of the terms, not the mere fixing of a definite term in office, which bars removal at will. *Naef,* 227 A.2d at 890; *Schluraff,* 208 A.2d 239.[9] Thus, Article VI § 7 of the Pennsylvania Constitution, as interpreted by the Pennsylvania Supreme Court, provides Defendant with the authority to remove Plaintiff prior to the expiration of his term.

## IV. Conclusion

The court finds that the terms of the DRPA Compact are silent regarding the removal of members of the DRPA. The language of the Compact providing that the Governor of Pennsylvania shall appoint members of the DRPA for five year terms does not prohibit the Governor from removing a Commissioner prior to the expiration of his or her term. In the absence of statutory language either providing for the means by which members of the DRPA may be removed or limiting the Governor's removal authority, federal law dictates that Defendant may remove Plaintiff prior to the expiration of his term in 1999. This conclusion is also in accordance with Pennsylvania law. Even if the court were to find that the terms of the Compact limited Defendant's removal authority, pursuant to *Morrison* the court would conclude that the Governor's inability to remove DRPA Commissioners prior to the expiration of their terms would impermissibly impede his ability to carry out his func-

---

Commonwealth of Pennsylvania or the State of New Jersey.

8. The fact that Pennsylvania's representation on the Commission is comprised exclusively of Executive Department appointees and officials lends support to the conclusion that the DRPA is meant to be responsive to the Executive Branch of the Commonwealth of Pennsylvania. Six of Pennsylvania's eight commissioners are appointed by the Governor, and the remaining two members who serve *ex-officio* are the State Treasurer and the Auditor General, both of whom are officers of the Executive Department. Compact art. II; Pa. Const. art. 3, § 1.

9. Plaintiff contends that interpreting the Compact to permit Defendant to remove him prior to the expiration of his term would render meaningless the language in the Compact which states that six of the Commonwealth's Commissioners "shall be appointed by the Governor of Pennsylvania for terms of five years." He argues that this reading therefore contradicts basic principles of statutory construction which require courts to interpret statutory language in a manner that gives effect to all of its terms. However, the court's reading of the language of the Compact does not render the term "five years" meaningless if it is read not as a prohibition on the Governor's removal authority, but as a means limiting the length of the term.

tions as Chief Executive of the Commonwealth.

An appropriate order will be issued by the court.

### ORDER

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's request for a declaratory judgment that he is entitled, absent misconduct, to remain in his position as a Commissioner of the Delaware River Port Authority until the expiration of his term on December 28, 1999 is **DENIED;**

2. Plaintiff's request for permanent injunctive relief prohibiting Defendant from removing him prior to the expiration of his term is **DENIED;**

3. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff and close the file.